UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NATALIE GORDON, Derivatively On Behalf of UNITED RENTALS, INC., <br><br>             Plaintiff, <br><br>     vs. <br><br> WAYLAND R. HICKS, BRADLEY S. JACOBS, JOHN N. MILNE, MICHAEL J. KNEELAND, MICHAEL J. NOLAN, JOSEPH B. SHERK, CHRISTIAN M. WEYER, HOWARD L. CLARK, JR., RONALD M. DEFEO, MICHAEL S. GROSS, SINGLETON MCALLISTER, BRIAN D. MCAULEY, JOHN S. MCKINNEY, MARK SUWYN, GERALD TSAI, JR., LEON D. BLACK, JASON PAPASTAVROU, <br><br>             Defendants, <br><br>     -and- <br><br> UNITED RENTALS, INC., a Delaware corporation, <br><br>             Nominal Defendant. | Civil Action No. 3:05-CV-1216-CFD <br><br> VERIFIED FIRST AMENDED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, GROSS MISMANAGEMENT, WASTE OF CORPORATE ASSETS, UNJUST ENRICHMENT, VIOLATIONS OF THE SARBANES-OXLEY ACT OF 2002 AND VIOLATION OF SECTION 14 OF THE SECURITIES AND EXCHANGE ACT OF 1934 <br><br><br> June 5, 2006 |

JURY TRIAL DEMANDED

Plaintiff, by her attorneys, submits this Verified First Amended Shareholder Derivative Complaint (the "Complaint") against the defendants named herein.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought by a shareholder of United Rentals Inc. ("United Rentals" or the "Company"),  on behalf of the Company against certain of its officers and directors seeking to remedy defendants' violations of state law, including breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment, violations of the Sarbanes-Oxley Act of 2002 and violations of §14(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), which occurred between August 5, 1998, and the present (the "Relevant Period") and that have caused substantial losses to United Rentals and other damages, such as to its reputation and goodwill.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C §1331 in that plaintiff's claims arise in part out of the laws of the United States, including the Sarbanes-Oxley Act of 2002 and violations of §14(a) of the Exchange Act.  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

3.      This Court retains general jurisdiction over each named defendant who is a resident of Connecticut.  Additionally, this Court has specific jurisdiction over each named nonresident defendant because these defendants maintain sufficient minimum contacts with Connecticut to render jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.  United Rentals is a citizen of Connecticut, and because the allegations contained herein are brought derivatively on behalf of the Company, defendants' conduct was purposefully directed at Connecticut.  Additionally, defendants' conduct arose out of Connecticut, where the Company maintains its corporate headquarters.  Finally, exercising jurisdiction over any nonresident defendants is reasonable under these circumstances.

4.      Venue is proper in this Court because one or more of the defendants either resides in or maintains executive offices in this District, a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed

herein and aiding and abetting and conspiracy in violation of fiduciary duties owed to United Rentals occurred in this District, and defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## SUMMARY OF THE ACTION

5.     United Rentals is an equipment rental holding company with a network of more than 730 rental locations in the United States, Canada and Mexico.  The Company primarily conducts its operations through its wholly-owned subsidiary United Rentals (North America), Inc. and its subsidiaries.  In addition to renting equipment, the Company sells used rental equipment, acts as a dealer for new equipment and sells related merchandise and contractor supplies, parts and service. Its customers include construction and industrial companies, manufacturers, utilities, municipalities, and homeowners.

6.     After its August 1998 incorporation, United Rentals embarked on a plan designed and implemented by certain of the defendants to increase its holdings.  During the ensuing years, the Company acquired a number of rental companies, offered its stock for sale to the public and obtained credit from lenders.  What these other rental companies, lenders and the general public didn't know during this time was that United Rentals' publicly-filed financial statements, press releases and other oral and written representations about its financial affairs grossly misrepresented the Company's true financial status.  This plan eventually would have a devastating impact on the Company.

7.     It took over six years for the truth to finally begin to emerge.  In late August 2004, United Rentals disclosed that it had received a document subpoena from the Securities and Exchange Commission ("SEC") relative to an investigation entitled *In the Matter of United Rentals, Inc.*  The documents requested suggested a broad-based inquiry into the Company's accounting practices.  By March 2005, the Company had formed a special committee of its Board of Directors (the "Board") and decided to delay filing its 2004 Form 10-K.

8.     In July 2005, United Rentals announced in a press release that it had decided to fire its Chief Executive Officer ("CEO") for failing to perform his duties and refusing to answer questions about his role in the Company's accounting mess, and later wasted corporate assets by agreeing to pay him millions of dollars as good riddance.  The press release also announced that the

special committee had uncovered accounting improprieties relative to a number of equipment sale-leaseback transactions and that the Company expected to restate its financials for fiscal years 2000-2003 to reflect revisions to self-insurance reserves and income taxes.

9.      The news continued to get worse for United Rentals. To avoid default under its debt instruments, in September 2005 the Company was forced to pay nearly $40 million to its lenders to obtain waivers of defaults associated with the delayed filings of its financial statements. In November 2005, United Rentals announced that it had incurred costs of about $15 million from the SEC investigation. In a January 26, 2006, press release United Rentals announced that the special committee of the Board had uncovered massive accounting fraud and problems with financial controls, concealment of kickbacks made to suppliers to motive them to buy used equipment at artificially-inflated levels. The press release indicated that the Company would have to restate its financials for 2000-2003 in a wide variety of areas.

10.     The long-delayed Form 10-K for fiscal year 2004 (filed concurrently with Form 10-K for fiscal year 2005), which was finally filed at the end of March 2006, admitted accounting irregularities in the following areas: (1) recognition of equipment rental revenues; (2) sale-leaseback transactions; (3) self-insurance reserves; (4) customer relationships; (5) income taxes; (6) buy-outs of equipment operating leases; (7) trade packages; and (8) purchase accounting. The Form 10-K confirmed that the pervasive accounting fraud, errors and kickbacks required the restatement of the Company's financials for fiscal years 2002 and 2003, with negative impacts on operating income and profitability ranging well into the millions of dollars, as well as disclosure of at least a $65 million of aggregate negative impact on the Company for the annual periods prior to fiscal year 2002.

11.     By April 2006, United Rentals filed its long-delayed Forms 10-Q for the first three quarterly periods of fiscal year 2005. The Company was unable to timely file these reports because of the ongoing SEC investigation, review by the special committee of the Board and the restatement of the Company's financials for fiscal years 2002 and 2003. The reports admitted wide-ranging, pervasive irregularities with the Company's financial control environment, financial statement close process, income taxes, self-insurance reserves and bulk rental assets.

12.     As of May 9, 2006, the SEC investigation was ongoing and unresolved.

13.     The acts and omissions by the defendants named below as more particularly alleged herein constitute breaches of the fiduciary duties of care, good faith, diligence, loyalty and independence that they owed to the Company and to its public shareholders, and also support causes of action for abuse of control, waste of corporate assets and gross mismanagement.  Despite the fact that United Rentals was forced to restate its financials for fiscal years 2002 and 2003, none of the Company's officers and directors who received many millions of dollars of bonuses or equity-based compensation during the 12 months following the original filing date of the restated financials has returned that compensation, as they are required to do under §304 of the Sarbanes-Oxley Act of 2002 ("SOX §304").[1]  Moreover, in light of the substantial harm caused to the Company by the defendants named herein, the officers and directors who received multi-million dollar paydays in the aggregate during the Relevant Period were unjustly enriched and should be compelled to repay to the Company.

## THE PARTIES

14.     Plaintiff Natalie Gordon is, and was at times relevant hereto, an owner and holder of United Rentals common stock.

15.     Nominal defendant United Rentals is a corporation organized and existing under the laws of the state of Delaware with its headquarters located at Four Greenwich Office Park, Greenwich, Connecticut.  United Rentals is an equipment rental company with a network of more than 730 rental locations in the United States, Canada and Mexico.  In addition to renting equipment, the Company sells used rental equipment, acts as a dealer for new equipment and sells related merchandise and contractor supplies, parts and service.  Its customers include construction and industrial companies, manufacturers, utilities, municipalities, homeowners and others.

16.     Defendant Wayland R. Hicks ("Hicks") is the CEO of United Rentals, and has been since December 16, 2003.  Since 1998, Hicks has been the Company's Vice Chairman and a director.  Hicks previously served as Chief Operating Officer of United Rentals from November 1997 until December 2003, when he became CEO.  Because of Hicks' positions, he knew the adverse, non-

---

[1]  P.L. 107-204, Title III, § 304, 116 Stat. 745, 15 U.S.C. § 7243.

public information about the business of United Rentals, as well as its accounting improprieties, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Hicks participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  For FY:98, United Rentals paid Hicks a salary of $400,000 (with $200,000 paid as cash and the remainder as 7,238 shares of common stock awarded to him that were valued at about $200,000), a bonus of $325,000, stock options valued at $775,000, and $1,500 of other compensation. For FY:99, the Company paid Hicks a salary of $400,000 (with $200,000 paid as cash and 8,200 shares of common stock awarded to him that were valued at about $200,000), a bonus of $400,000, and other compensation of $180,094 (which included moving expenses of $178,594).  For fiscal year 2000, the Company paid Hicks a salary of $450,000 (with $239,615 paid as cash and 11,370 shares of common stock that were valued at about $210,385), and other compensation of $1,500.  For FY:01, the Company paid Hicks $459,900 in salary and other compensation, and he also was awarded 500,000 "restricted stock units," a lucrative form of equity-based compensation valued by the Company at $11,900,000.  For FY:02, the Company paid Hicks $462,000 in salary and other compensation and a bonus of $300,000 (paid half in cash and half in stock).  For FY:03, the Company paid Hicks $486,400 in salary, a bonus of $240,000 (paid half in cash and half in stock), a perquisite valued at $76,000 (the value of his personal use of Company aircraft), and finally, an extension of a stock option originally granted in 1997 and/or 1998 worth $325,000.  For FY:04, the Company paid Hicks $610,771 in salary and other compensation, a bonus of $688,200, and he also was awarded 200,000 "restricted stock units," a lucrative form of equity-based compensation valued by the Company at $3,458,000.  For FY:05, Hicks received $607,600 in salary and other compensation, and a bonus of $636,3000.  On April 4, 2006, despite the raft of financial control problems and other irregularities only recently disclosed by the Company, the Board nevertheless rewarded Hicks by increasing his salary to $750,000 per annum.  Hicks has not returned any of the bonuses or other incentive-based or equity-based compensation that he received

during the 12-month periods following the dates the Company filed its quarterly and annual financial statements for fiscal years 2002-03, as he was required to do by SOX §304, because such statements were restated due to, in part, misconduct that caused them to be in material non-compliance with federal securities laws.

17.     Defendant Bradley S. Jacobs ("Jacobs") is, and at all times relevant hereto was, Chairman of the Board of United Rentals. Jacobs previously served as CEO of United Rentals at all relevant times hereto until he resigned on December 15, 2003, at which time he became a highly-paid consultant to the Company.  Because of Jacobs' positions, he knew the adverse, non-public information about the business of United Rentals, as well as its accounting improprieties, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Jacobs participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.  For FY:98, United Rentals paid Jacobs $291,500 in salary and other compensation, a bonus of $450,000, and awarded him stock options valued at $2,950,000.  For FY:99, the Company paid Jacobs $351,500 in salary and other compensation, and a bonus of $550,000.  For fiscal year 2000, the Company paid Jacobs $486,500 in salary and other compensation.  For FY:01, the Company paid Jacobs a salary and other compensation of $522,200, and he also was awarded 800,000 "restricted stock units," a lucrative form of equity-based compensation valued by the Company at $19,040,000.  For FY:02, the Company paid Jacobs a salary and other compensation of $494,900, a bonus of $400,000 (half paid in cash and half in stock), and finally, an extension of a stock option originally granted in 1997 and/or 1998 worth $1,200,000.  For FY:03, the Company paid Jacobs $525,550 in salary, a bonus of $320,000, and a perquisite valued at $210,000 (the value of his personal use of Company aircraft).  After Jacobs resigned as CEO, he and the Company entered into a consulting agreement under which he is entitled to receive an annual fee of up to $250,000, health and insurance benefits, $2,084 per month in lieu of benefits other than health insurance and personal use of the Company's aircraft.  As of the

end of FY:05, this consulting agreement remained in effect.  Jacobs has not returned any of the bonuses or other incentive-based or equity-based compensation that he received during the 12-month periods following the dates the Company filed its quarterly and annual financial statements for fiscal years 2002-03, as he was required to do by SOX §304, because such statements were restated due to, in part, misconduct that caused them to be in material non-compliance with federal securities laws.

18.    Defendant John N. Milne ("Milne") was a director of the Company and its Vice Chairman and Secretary from the inception of the Relevant Period through his resignation from the Board effective on or about August 29, 2005.  He was the Company's Chief Acquisition Officer from the Company's formation in September 1997, and became President of the Company in June 2001 and Chief Financial Officer ("CFO") in December 2002, holding those positions through the date of his involuntary termination by the Company effective on or about August 15, 2005.   Because of Milne's positions, he knew the adverse, non-public information about the business of United Rentals, as well as its accounting improprieties, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Milne participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. For FY:98, United Rentals paid Milne $226,500 in salary and other compensation, and a bonus of $400,000.  For FY:99, the Company paid Milne $226,500 in salary and other compensation, and a bonus of $400,000.  For fiscal year 2000, the Company paid Milne $336,500 in salary and other compensation.  For FY:01, the Company paid Milne $372,200 in salary and other compensation, and he also was awarded 470,000 "restricted stock units," a lucrative form of equity-based compensation valued by the Company at $11,186,000.  For FY:02, the Company paid Milne $346,4000 in salary and other compensation and a bonus of $300,000 (paid half in cash and half in stock).  For FY:03, the Company paid Milne $399,400 in salary and other compensation, a bonus of $240,000 (paid half in cash and half in stock), a perquisite valued at $133,000 (the value of his personal use of Company aircraft), and finally, an extension of a stock option originally granted in 1997 and/or 1998 worth

$300,000. For FY:04, United Rentals paid Milne $576,994 in salary and other compensation, and he also was awarded 160,000 "restricted stock units," a lucrative form of equity-based compensation valued by the Company at $2,766,400. For FY:05, United Rentals paid Milne $395,787 in salary and other compensation. Milne has not returned any of the bonuses or other incentive-based or equity-based compensation that he received during the 12-month periods following the dates the Company filed its quarterly and annual financial statements for fiscal years 2002-03, as he was required to do by SOX §304, because such statements were restated due to, in part, misconduct that caused them to be in material non-compliance with federal securities laws.

19.     Defendant Michael J. Kneeland ("Kneeland") joined United Rentals as a district manager in 1998 and was subsequently named Vice President-Aerial Operations, and later, Vice President, Southern Region. He was appointed as the Company's Executive Vice President of Operations on or about September 2003. Because of Kneeland's position, he knew the adverse, non-public information about the business of United Rentals, as well as its accounting improprieties, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the Relevant Period, Kneeland participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. For FY:03, United Rentals paid Kneeland $242,00 in salary and other compensation, and a bonus of $176,000 (half paid in cash and half in stock). He also was received a "restricted stock award" valued by the Company at $110,120 during that fiscal year. For FY:04, the Company paid Kneeland $291,845 in salary and other compensation, and a cash bonus of 326,500. For FY:05, United Rentals paid Kneeland $291,845 in salary and other compensation, and a cash bonus of $311,200. On April 4, 2006, the Board determined to increase the base salary for Kneeland to $400,000 per annum.

20.     Defendant Michael J. Nolan ("Nolan") was the CFO of United Rentals from the inception of the Relevant Period until on or about December 6, 2002. Because of Nolan's position, he knew the adverse, non-public information about the business of United Rentals, as well as its

accounting improprieties, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the Relevant Period, Nolan participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. For FY:98, United Rentals paid Nolan $176,212 in salary and other compensation, a bonus of $200,000, and awarded him stock options valued at $515,000. For FY:99, the Company paid Nolan $176,500 in salary and other compensation, and a bonus of $300,000. For fiscal year 2000, the Company paid Nolan a salary of $285,000. For FY:01, the Company paid Nolan $176,500 in salary and other compensation, and he also was awarded 235,000 "restricted stock units," a lucrative form of equity-based compensation valued by the Company at $5,593,000. For FY:02, the Company paid Nolan a salary of $267,462 and other compensation of $7840.

21.    Defendant Joseph B. Sherk ("Sherk") became a Vice President and the Corporate Controller of United Rentals in or about June 2004. As of January 2006, he was involuntarily terminated as the Company's Controller but apparently continued to hold the title of "Vice President." Because of Sherk's position, he knew the adverse, non-public information about the business of United Rentals, as well as its accounting improprieties, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the Relevant Period, Sherk participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

22.    Defendant Christian M. Weyer ("Weyer") was a director of United Rentals from December 1998 until May 2004. Because of Weyer's position, he knew the adverse, non-public information about the business of United Rentals, as well as its accounting improprieties, finances, markets and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in

connection therewith. During the Relevant Period, Weyer participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. During the Relevant Period, Weyer sold 10,000 shares of United Rentals stock for proceeds of $178,860.00.

23.    Defendant Howard L. Clark, Jr. ("Clark") is a director of United Rentals and has been since April 2004. Because of Clark's position, he knew the adverse, non-public information about the business of United Rentals, as well as its accounting improprieties, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Clark participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

24.    Defendant Ronald M. DeFeo ("DeFeo") was a director of United Rentals from the inception of the Relevant Period until June 2005. Because of DeFeo's position, he knew the adverse, non-public information about the business of United Rentals, as well as its accounting improprieties, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, DeFeo participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

25.    Defendant Michael S. Gross ("Gross") is a director of United Rentals and has been since January 1999. Effective as of April 12, 2006, he was designated by the Company as the Board's "lead director." Because of Gross' position, he knew the adverse, non-public information about the business of United Rentals, as well as its accounting improprieties, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith.

During the Relevant Period, Gross participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

26.     Defendant Singleton McAllister ("McAllister") is a director of United Rentals and has been since April 2004. Because of McAllister's position, she knew the adverse, non-public information about the business of United Rentals, as well as its accounting improprieties, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to her in connection therewith. During the Relevant Period, McAllister participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

27.     Defendant Brian D. McAuley ("McAuley") is a director of United Rentals and has been since April 2004. Because of McAuley's position, he knew the adverse, non-public information about the business of United Rentals, as well as its accounting improprieties, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, McAuley participated in the issuance of false and/or misleading

28.     Defendant John S. McKinney ("McKinney") is a director of United Rentals and has been since September 1998. Because of McKinney's position, he knew the adverse, non-public information about the business of United Rentals, as well as its accounting improprieties, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, McKinney participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

29.     Defendant Mark Suwyn ("Suwyn") is a director of United Rentals and has been since September 2004. Because of Suwyn's position, he knew the adverse, non-public information about the business of United Rentals, as well as its accounting improprieties, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Suwyn participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

30.     Defendant Gerald Tsai, Jr. ("Tsai") is a director of United Rentals and has been since July 2002. Because of Tsai's position, he knew the adverse, non-public information about the business of United Rentals, as well as its accounting improprieties, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Tsai participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

31.     Defendant Leon D. Black ("Black") is a director of United Rentals and has been since January 1999. Because of Black's position, he knew the adverse, non-public information about the business of United Rentals, as well as its accounting improprieties, finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Black participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

32.     Defendant Jason Papastavrou ("Papastavrou") is a director of United Rentals and has been since June 2005. Because of Papastavrou's position, he knew the adverse, non-public information about the business of United Rentals, as well as its accounting improprieties, finances, markets and present and future business prospects, via access to internal corporate documents,

conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Papastavrou participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings.

33.     The defendants named above who were directors during the Relevant Period, but were not employed as executives by the Company, were entitled to receive compensation for their service. According to Form 10-K for FY:05 filed with the SEC on March 31, 2006, each non-executive director of the Company for FY:04 through FY:06 was entitled to receive the following compensation for his or her service: (a) an annual, fully-vested grant of options to purchase 3,000 shares of the Company's common stock at an exercise price equal to the market value of the stock at the time of the grant; (b) an annual "retainer fee" of $40,000; (c) a fee of $1,500 for each board and/or committee meeting he or she attended (except for the audit and special committees of the Board); and (d) an annual fee of $5,000 for serving as the chairman of any committee except the audit and special committees. To the extent he or she served on the audit and/or special committee(s) of the Board, he or she also was entitled to receive: (a) a fee of $2,000 for attendance at each such committee meeting; and (b) if serving as chairman, an annual fee of $10,000 for his or her service in each such position.

34.     The defendants identified in ¶¶16-18 and ¶¶22-32 may be referred to herein as the "Director Defendants." The defendants identified in ¶¶16-21 may be referred to herein as the "Officer Defendants." Collectively, the Director Defendants and Officer Defendants may be referred to herein as the "Individual Defendants."

### DUTIES OF THE INDIVIDUAL DEFENDANTS

35.     By reason of their positions as officers, directors and/or fiduciaries of United Rentals and because of their ability to control the business and corporate affairs of United Rentals, the Individual Defendants owed United Rentals and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage United Rentals in a fair, just, honest and equitable manner. The Individual Defendants were

and are required to act in furtherance of the best interests of United Rentals and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

36.     Each director and officer of the Company owes to United Rentals and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's revenue, margins, operations, performance, management, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

37.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of United Rentals, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.  Because of their advisory, executive, managerial and directorial positions with United Rentals, each of the Individual Defendants had access to adverse, non-public information about the financial condition, operations, and improper representations of United Rentals.

38.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of United Rentals, and was at all times acting within the course and scope of such agency.

39.     To discharge their duties, the officers and directors of United Rentals were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of United Rentals were required to, among other things:

(a)     refrain from acting upon material inside corporate information to benefit themselves;

(b)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

- 14 -

(c)     conduct the affairs of the Company in an efficient, business like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e)     remain informed as to how United Rentals conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

(f)     ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations.

40.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of United Rentals, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and/or directors of the Company during the Relevant Period has been ratified by the remaining Individual Defendants who collectively comprised all of United Rentals' Board during the Relevant Period.

41.     The Individual Defendants breached their duties of loyalty and good faith by allowing defendants to cause or by themselves causing the Company to misrepresent its financial results and prospects, as detailed herein *infra*, and by failing to prevent the Individual Defendants from taking

such illegal actions.  In addition, as a result of the illegal acts and omissions of the Individual Defendants and their course of conduct during the Relevant Period, the Company is now the subject of several class action law suits that allege violations of federal securities laws.  As a result, United Rentals has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to:

(a)    Costs incurred to carry out internal investigations and to respond to an informal inquiry by the SEC, including fees paid to outside accountants, auditors and legal counsel;

(b)    Costs incurred in investigating and defending United Rentals and certain officers in the class actions, plus potentially millions of dollars in settlements or to satisfy an adverse judgment;

(c)    Costs incurred to secure agreements from various lenders of the Company to waive certain events of default under the terms of the Company's loan agreements, promissory notes and other debt instruments, including, *inter alia*, defaults arising out of the Company's failure to timely file required reports with the SEC such costs including: (1) consent fees; (2) amortization expense to the extent such consent fees are amortized and payable over time; and (3) other costs associated with the transactions under which such consents were obtained;

(d)    Costs associated with severance and other payments made to terminated Company officials whose terminations, in whole or in part, were related to the misconduct alleged herein.

42.    Moreover, these actions have irreparably damaged United Rentals' corporate image and goodwill.  The Company has stated on numerous occasions that the public cannot rely on financial statements filed by the Company with the SEC for the vast majority of the Relevant Period. The Company has disclosed a litany of improper accounting activity compounded by admitted active concealment of material information and kickbacks (a.k.a. "inducements") that were made for years to induce suppliers to buy the Company's used equipment at a premium.  For at least the foreseeable future, therefore, United Rentals will suffer from what is known as the "liar's discount," a term applied to the stocks of companies that have been implicated in illegal behavior and have misled the

investing public, such that United Rentals' ability to raise equity capital or debt on favorable terms in the future is now impaired.

### CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

43.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breach of their respective duties.

44.     During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did: (i) conceal the fact that the Company was improperly misrepresenting its financial results, in order to allow defendants to artificially inflate the price of the Company's shares; (ii) maintain the Individual Defendants' executive and directorial positions at United Rentals and the profits, power and prestige that the Individual Defendants enjoyed as a result of these positions; and  (iii) deceive the investing public, including shareholders of United Rentals, regarding the Individual Defendants' management of United Rentals' operations, the Company's financial health and stability, and future business prospects, specifically related to the Company's financials that had been misrepresented by defendants throughout the Relevant Period.  In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

45.     The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct commencing by at least the inception of the Relevant Period and continuing thereafter.  During this time the Individual Defendants caused the Company to conceal the true fact that United Rentals was misrepresenting its financial results.  In addition, defendants also made other specific, false statements about United Rentals' financial performance and future business prospects, as alleged herein.

46.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, waste of

corporate assets, violations of the Sarbanes-Oxley Act of 2002 and unjust enrichment; to conceal adverse information concerning the Company's operations, financial condition and future business prospects, and to artificially inflate the price of United Rentals common stock in an effort to affirmatively mislead other entities that were acquired by the Company, as well as lenders and the general public; (iii) protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained as a result thereof; and (iv) dispose of over $178,860.00 of their personally held stock.

47.     The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently misrepresent its financial results.  Because the actions described herein occurred under the authority of the Board of Directors, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

48.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

### IMPROPER STATEMENTS

49.     The Individual Defendants, by their fiduciary duties of care, good faith and loyalty owed to United Rentals a duty to ensure that the Company's financial reporting fairly presented, in all material respects, the operations and financial condition of the Company.  In order to adequately carry out these duties, it is necessary for the Individual Defendants to know and understand the material non-public information to be either disclosed or omitted from the Company's public statements.  This material, non-public information included the accuracy of the Company's accounting.  Furthermore, defendants Gross, Tsai, Suwyn and McAuley, as members of the Audit Committee, had a special duty to know and understand this material information as set out in the Audit Committee's charter, which provides that the Audit Committee is responsible for discussing

the Company's earnings press releases, as well as financial information and earnings guidance provided to analysts and rating agencies. Defendants Hicks, Jacobs, Milne, Kneeland, Nolan and Sherk, as officers of United Rentals, had ample opportunity to discuss this material information with their fellow officers at management meetings and via internal corporate documents and reports. Moreover, defendants Hicks, Jacobs, Milne, Weyer, Clark, DeFeo, Gross, McAllister, McAuley, McKinney, Suwyn, Tsai, Black and Papastavrou, as directors of United Rentals had ample opportunity to discuss this material information with management and fellow directors at any of the Board meetings that occurred during the Relevant Period as well as at meetings of committees of the Board. Despite these duties, the Individual Defendants negligently, recklessly, and/or intentionally caused or allowed, by their actions or inactions, the following improper statements to be disseminated by United Rentals to the investing public and the Company's shareholders during the Relevant Period.

50.    As more particularly alleged below, an informal SEC inquiry into United Rentals' accounting practices that was announced by the Company in August 2004 led to the restatement of the Company's financials for fiscal years 2002 and 2003, the delayed filing of financials for fiscal year 2004, and the disclosure of massive losses for the aggregate periods prior to fiscal year 2002. Thus, the Company's financial statements for such periods, as they were originally filed, were materially false, incomplete and inaccurate.

51.    On August 14, 1998, one or more of the Individual Defendants caused or allowed United Rentals to file with the SEC its Form 10-Q report for the quarterly period ended June 30, 1998. The Form 10-Q was signed by defendant Nolan and non-defendant Sandra E. Welwood ("Welwood"), who was designated as the Company's Vice President, Corporate Controller (Chief Accounting Officer), and contained the following statement: "Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized."

52.    On November 16, 1998, one or more of the Individual Defendants caused or allowed United Rentals to file with the SEC its Form 10-Q report for the quarterly period ended September 30, 1998. The Form 10-Q was signed by defendant Nolan and non-defendant Welwood, and

contained the following statement: "Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized."

53.     On December 24, 1998, one or more of the Individual Defendants caused or allowed the Company to file a Form 8-K with the SEC.  Signed by defendant Nolan, the form contained the following statement:  "Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized on this 23rd day of December, 1998."  The Form 8-K set forth financial information relative to certain acquisitions by the Company that were accounted for as purchases for financial accounting purposes.

54.     On March 22, 1999, one or more of the Individual Defendants caused or allowed the Company to file a Form 8-K, together with a concurrent press release, announcing an offering of $250,000,000 of its 9% Senior Subordinated Notes due in 2009.  The Form indicated that the Company intended to use the net proceeds from the offering to repay outstanding indebtness under the Company's revolving line of credit, for future acquisitions, fleet expansion and general corporate purposes.

55.     On March 29, 1999, one or more of the Individual Defendants caused or allowed United Rentals to file with the SEC its Form 10-K report for the annual period ended December 31, 1998.  The Form 10-K was signed by defendant Nolan and contained the following statement: "Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized."  The form also was signed by defendants Jacobs, Hicks, Milne, McKinney, Black, DeFeo, Gross, Tsai, Weyer and Nolan, and non-defendants William F. Berry ("Berry"), Richard D. Colburn ("Colburn") and Richard J. Heckmann ("Heckmann"), such signatures being immediately preceded by the following statement: "Pursuant to the requirements of the Securities Exchange Act of 1934, this report has been signed below by the following persons on behalf of the registrants ...."

56.     On May 17, 1999, one or more of the Individual Defendants caused or allowed United Rentals to file with the SEC its Form 10-Q report for the quarterly period ended March 31,