**IMPROPER FINANCIAL REPORTING DURING THE RELEVANT PERIOD**

113.    The Individual Defendants used improper accounting practices in violation of GAAP and SEC reporting requirements to materially overstate the financial performance of United Rentals during the Relevant Period.  GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time.  SEC Regulation S-X (17 C.F.R. §210.4-01(a)(1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate, despite footnote or other disclosure.  Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements.  17 C.F.R. §210.10-01(a).

114.    Management is responsible for preparing financial statements that conform with GAAP.  As noted by the American Institute of Certified Public Accountants professional standards:

> [F]inancial statements are management's responsibility.... [M]anagement is responsible for adopting sound accounting policies and for establishing and maintaining internal control that will, among other things, initiate, record, process, and report transactions (as well as events and conditions) consistent with management's assertions embodied in the financial statements.   The entity's transactions and the related assets, liabilities, and equity are within the direct knowledge and control of management....  Thus, the fair presentation of financial statements in conformity with generally accepted accounting principles is an implicit and integral part of management's responsibility.

115.    United Rentals failed to file financial statements with the SEC that conformed to the requirements of GAAP; and defendants disseminated financial statements of United Rentals that were presumptively misleading and inaccurate.

116.    As a result of the foregoing improprieties, defendants caused United Rentals' reported financial results to violate, among other things, the following provisions of GAAP for which each defendant is necessarily responsible:

(a)     The principle that financial reporting should provide information that is useful to present and potential investors in making rational investment decisions and that information should be comprehensible to those who have a reasonable understanding of business and economic activities  (FASB Statement of Concepts No. 1, ¶34);

(b)     The principle that financial reporting should provide information about an enterprise's financial performance during a period. Investors and creditors often use information about the past to help in assessing the prospects of an enterprise. Thus, although investment and credit decisions reflect investors' expectations about future enterprise performance, those expectations are commonly based at least partly on evaluations of past enterprise performance (FASB Statement of Concepts No. 1, ¶42);

(c)     The principle that financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it. To the extent that management offers securities of the enterprise to the public, it voluntarily accepts wider responsibilities for accountability to prospective investors and to the public in general  (FASB Statement of Concepts No. 1, ¶50);

(d)     The principle that financial reporting should be reliable in that it represents what it purports to represent. The notion that information should be reliable as well as relevant is central to accounting  (FASB Statement of Concepts No. 2, ¶¶58-59);

(e)     The principle of completeness, which means that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions was violated (FASB Statement of Concepts No. 2, ¶79);

(f)     The principle of completeness, which means that nothing is left out of the information that may be necessary to ensure that it validly represents underlying events and conditions  (FASB Statement of Concepts No. 2, ¶80);

(g)     The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered. The best way to avoid injury to investors is to try to ensure that what is reported represents what it purports to represent  (FASB Statement of Concepts No. 2, ¶¶95, 97); and

(h)     The principle of materiality, which provides that the omission or misstatement of an item in a financial report is material if, in light of the surrounding circumstances, the magnitude of the item is such that it is probable that the judgment of a reasonable person relying

upon the report would have been changed or influenced by the inclusion or correction of the item (FASB Statement of Concepts No. 2, ¶132).

117.    Further, the undisclosed adverse financial information concealed by defendants during the Relevant Period is the type of information which, because of SEC regulations, regulations of the national stock exchanges and customary business practice, is expected by investors and securities analysts to be disclosed and is known by corporate officials and their legal and financial advisors to be the type of information which is expected to be and must be disclosed.

## DAMAGES TO THE COMPANY CAUSED BY THE INDIVIDUAL DEFENDANTS

118.    As a result of the Individual Defendants' acts and omissions, United Rentals has suffered immense damages, including, without limitation, the following:

(a)    The Company's market capitalization has been damaged by over $692 million;

(b)    The Company has suffered massive damage to its goodwill, reputation and credibility;

(c)    Financial statements for the Company that were not filed in a timely manner with the SEC and other financial controls problems caused the Company to expend at least $35 million in fees to lenders and incur transaction costs of at least $4 million to secure various consents and waivers from the lenders to avoid defaults and accelerated loan balances relative to the untimely filings;

(d)    By November 2005, United Rentals had expended at least $15 million for the nine months ended September 30, 2005, to cover costs relating to the SEC inquiry and related review by a committee of the Board, and the Company has continued to incur further costs in this regard since that time, including, for example, increased general and administrative expenses, accounting and legal fees;

(e)    The Company has been forced to incur costs to direct human resources to correct its defective internal controls and restate its financials for fiscal years 2002 and 2003;

(f)    The restated financials for fiscal years 2002 and 2003 revealed millions of dollars of understated and improperly classified income, expense, capital, insurance and tax items, and millions of dollars of overstated income;

(g)      Disclosures by the Company of improper accounting and other defective financial controls admitted that such improper procedures had an aggregate negative impact of about $65 million on the Company for the fiscal years prior to fiscal year 2002;

(h)      The termination of defendant Milne for cause cost the Company millions of dollars to repurchase his shares; and

(i)      The termination of Joseph Ehrenreich's employment agreement cost the Company millions of dollars to effectuate.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

119.    Plaintiff brings this action derivatively in the right and for the benefit of United Rentals to redress injuries suffered, and to be suffered, by the Company as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, violations of SOX §304, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants. United Rentals is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

120.    Plaintiff will adequately and fairly represent the interests of United Rentals in enforcing and prosecuting its rights.

121.    Plaintiff is and was an owner of the stock of United Rentals during all times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

122.    At the time plaintiff filed her original complaint in this matter, the then-current Board of Directors of United Rentals consisted of the following twelve individuals: defendants Hicks, Jacobs, Milne, Clark, Gross, McAllister, McAuley, McKinney, Suwyn, Black, Papastavrou and Tsai.[7]

---

[7] In April 2006, non-defendant Lawrence "Keith" Wimbush ("Wimbush") became a director of the Company and was designated as a member of the Board's audit committee.

123.    Plaintiff did not make any demand on the Board of United Rentals as it was constituted at the time she filed her original complaint to institute this action because such a demand would have been a futile, wasteful and useless act, particularly for the following reasons:

(a)    The principal professional occupation of defendant Hicks is his employment with United Rentals, pursuant to which he received and continues to receive substantial monetary compensations and other benefits. Specifically, for FY:03, United Rentals paid Hicks $802,400 in salary, bonus and other compensation, and in April 2003, the Compensation Committee voted to given him an extension of stock options originally granted in 1997 and/or 1998 worth $325,000. For FY:04, the Company paid him $610,771 in salary, bonus and other compensation, and he also was given a highly lucrative "restricted stock award" valued by the Company at $3,458,000. For FY:05, Hicks received $607,600 in salary, bonus and other compensation. As of the end of FY:05, he had accumulated 633,334 shares in the Company then valued at $14,813.682, as well as 525,000 exercisable options then valued at $3,105,250. Accordingly, defendant Hicks lacks independence from defendants Gross, Clark, McAuley and Tsai, defendants who are not disinterested and/or independent and who exert influence over defendant Hicks' compensation by virtue of their positions as members of the Compensation Committee. This lack of independence renders defendant Hicks incapable of impartially considering a demand to commence and vigorously prosecute this action;

(b)    The principal professional occupation of defendant Milne was his employment with United Rentals, pursuant to which he received substantial monetary compensations and other benefits. Specifically, for FY:03, United Rentals paid Milne $772,400 in salary, bonus and other compensation, and in April 2003, the Compensation Committee voted to give him an extension of stock options originally granted in 1997 and/or 1998 worth $300,000. For FY:04, United Rentals paid him $576,994 in salary, bonus and other compensation, and also was given a highly lucrative "restricted stock award" valued by the Company at $2,766,400. Further, as of the end of FY:04, he had accumulated 160,000 shares in the Company then valued at $3,024,000, as well as 450,000 exercisable options then valued at $2,078,625. For FY:05, United Rentals paid Milne $395,787 in salary, bonus and other compensation. In connection with Milne's separation from United Rentals, the Company purchased his shares and options for more than $7 million, which resulted in a pre-tax

expense of $5 million for the third quarter of fiscal year 2005.  Accordingly, Milne lacked independence from defendants Gross, Clark, McAuley and Tsai, defendants who are not disinterested and/or independent and who exert influence over Milne's compensation by virtue of their positions as members of the Compensation Committee.  This lack of independence rendered Milne incapable of impartially considering a demand to commence and vigorously prosecute this action.

(c)     On July 14, 2005, United Rentals issued a press release indicating that defendant Milne had failed to perform his duties and that this failure could constitute cause for his termination as the Company's President and CFO.  According to a Form 8-K filed with the SEC on August 16, 2005, Milne was terminated effective that date, and he had been asked to resign as a director, not only for such failures but also because he was "unwilling to respond to questions of the special committee of the board reviewing matters relating to the previously disclosed SEC inquiry of the Company."  According to a Form 8-K filed on behalf of the Company on August 30, 2005, Milne had resigned as a director effective August 29, 2005.  Given that at the time plaintiff filed her original complaint on August 2, 2005, Milne faced termination from the Company for demonstrably refusing to cooperate with any effort to investigate his role in the wrongdoing alleged herein, and as the Board failed to demand that he resign as a director but merely "asked" him to do so, demand on him and the rest of the Board to commence and vigorously prosecute this action would have been futile;

(d)     The principal professional occupation of defendant Jacobs during the Relevant Period through December 15, 2003, was his employment with United Rentals as its CEO.  During this portion of the Relevant Period, the Company paid him well in excess of $20 million in cash and stock-based compensation.  After Jacobs resigned as CEO on December 15, 2003, he and the Company entered into a consulting agreement under which he was and is entitled to receive an annual fee of up to $250,000, health and insurance benefits, $2,084 per month in lieu of benefits other than health insurance and personal use of the Company's aircraft. As of the end of FY:05, this consulting agreement remained in effect. Accordingly, Jacobs lacks independence from defendants Gross, Clark, McAuley and Tsai, defendants who are not disinterested and/or independent and who

- 66 -

exert influence over Jacobs' compensation by virtue of their positions as members of the Compensation Committee.  This lack of independence renders Jacobs incapable of impartially considering a demand to commence and vigorously prosecute this action.

      (e)     As of April 21, 2004, defendants Jacobs, Hicks, Milne, Gross, McKinney and Tsai owned thousands of United Rentals shares.  Specifically, defendant Jacobs owned 5,673,955 shares; defendant Hicks owned 1,115,885 shares; defendant Milne owned 2,297,856 shares; defendant Gross owned 35,644 shares; defendant McKinney owned 681,951 shares; and defendant Tsai owned 6,786 shares.  Thus, these defendants had every incentive to participate in the improper accounting in order to effectuate a commensurate rise in United Rentals' stock price;

      (f)     According to United Rentals' Proxy Statement filed with the SEC on or about April 21, 2004 and the Company's public website, defendants Gross, Tsai, Suwyn and McAuley were, during the Relevant Period, members of the Audit Committee.[8]

        (i)     The Audit Committee is responsible, by its charter, for reviewing and discussing with management the Company's annual audited financial statements, including disclosures made in management's discussion and analysis, and recommending to the Board whether the audited financial statements should be included in the Company's Form 10-K; reviewing and discussing with management and the independent auditor the Company's quarterly financial statements prior to the filing of its Form 10-Q, including the results of the independent auditor's review of the quarterly financial statements and disclosures made in management's discussion and analysis; discussing the Company's earnings press releases, as well as financial information and earnings guidance provided to analysts and rating agencies; discussing with management and the independent auditor significant financial reporting issues and judgments made in connection with the preparation of the Company's financial statements, including any significant changes in the Company's selection or application of accounting principles, any major issues as to the adequacy of the Company's internal controls and any special steps adopted in light of material control deficiencies; periodically reviewing with management its evaluation of the Company's internal

_____

[8] In April 2006, non-defendant Wimbush became a member of the Audit Committee.

control structure and procedures for financial reporting, and periodically reviewing management's conclusions about the efficacy of such internal controls and procedures, including any significant deficiencies in, or material non-compliance with such controls and procedures; and reviewing the significant reports to management prepared by the internal auditing department and management's responses.

(ii)     In a near-complete abdication of the duties and responsibilities of the Audit Committee enumerated above, this committee recommended that the Board include the improper audited consolidated financial statements in United Rentals' Annual Report on the Form 10-K for the year ended December 31, 2003, as filed with the SEC, as well as the other improper press releases and SEC filings described herein. By such actions, defendants Gross, Tsai, Suwyn and McAuley breached their duties by causing or allowing the improper financials described above. As a result of these defendants' breach of their duties, any demand upon them would have been futile;

(g)     The entire United Rentals Board and senior management participated in the wrongs complained of herein. United Rentals' directors are not disinterested or independent due to the following: defendants Hicks, Jacobs, Milne, Weyer, Clark, DeFeo, Gross, McAllister, McAuley, McKinney, Suwyn, Tsai, Black and Papastavrou served on the United Rentals Board during the Relevant Period. Pursuant to their specific duties as Board members, each was charged with the management of the Company and to conduct its business affairs. Each of these defendants breached the fiduciary duties that they owed to United Rentals and its shareholders in that they failed to prevent, timely detect and correct the raft of financial controls problems herein alleged that led to, for example, the delayed filings of the Company's financial reports with the SEC for fiscal years 2004 and 2005; the restatement of all United Rentals' financial reports for fiscal years 2002-03; and disclosures of huge losses reported for periods prior to fiscal year 2002. This near-complete abdication of its responsibilities to the Company indicates that the members of the Board could not and cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action, because its members are interested personally in the outcome as it is their actions that have subjected United Rentals to millions of dollars in liability for

possible violations of applicable federal securities and state laws, making demand on the Board

utterly futile;

       (h)     On March 14, 2005, United Rentals filed a Form 8-K with the SEC.  The

Form 8-K stated:

> In January 2005, an alleged stockholder of the company filed an action in Connecticut State Superior Court, Judicial District of Norwalk/Stamford at Stamford, purportedly suing derivatively on behalf of the company. The action names as defendants each of our directors and our vice president and corporate controller. In addition, the action names the company as a nominal defendant. The complaint alleges, among other things, that the individual defendants breached their fiduciary duties to the company by causing or allowing the company to disseminate misleading and inaccurate information to shareholders and the market and by failing to establish and maintain adequate accounting controls, thus exposing the company to damages. The complaint seeks unspecified compensatory damages, costs and expenses against the individual defendants.

> In November 2004, the company also received a letter from counsel for a purported shareholder, raising allegations similar to the ones set forth in the derivative complaint described above and demanding that the company take action in response to those allegations against certain of its current and/or former directors and officers. Following receipt of the letter, ***the board of directors formed a special committee of the board to consider the letter.***

The fact that the Board chose to form a special committee to investigate allegations similar to those

alleged in the instant complaint is an admission that a majority of the Board lacked the independence

to adequately consider a demand.  Otherwise, the entire board would have considered the demand

letter referred to in the March 14 Form 8-K.  Accordingly, demand would have been futile;

       (i)     Any suit by the current directors of United Rentals to remedy these wrongs

would likely expose the Individual Defendants and United Rentals to further violations of the

securities laws that would result in civil and/or criminal actions being filed against one or more of

the Individual Defendants; for example, the Individual Defendants who signed the false, misleading

or otherwise incomplete financial statements filed on behalf of the Company during the Relevant

Period, as more particularly alleged above, may be held liable as primary violators of federal

securities laws for making false statements within the meaning of Section 10(b) of the Exchange Act

and Rule 10b-5 promulgated thereunder.  In light of such looming personal liability, demand upon

such defendants, which would compel them to investigate and possibly admit their own liability,

would have been futile;

(j)     The Compensation Committee of the Board, by its charter, determines, reviews and approves corporate goals and objectives relevant to the compensation of the CEO and, to the extent it deems appropriate, other executive officers; determines and approves the compensation of the CEO; reviews and approves the compensation of the Company's other executive officers; reviews and approves any incentive-compensation plan or equity-based plan for the benefit of executive officers; administers any incentive-compensation plan or equity-based plan for the benefit of executive officers; and makes recommendations to the Board with respect to the compensation of the Company's non-management directors. The Compensation Committee is comprised of defendants Gross, Clark, McAuley and Tsai. As the members of the Compensation Committee singularly control the other defendants' awards, the remaining members of the Board will not institute this action against defendants Gross, Clark, McAuley and Tsai. To do so would jeopardize each defendant's personal financial compensation. Thus, demand on defendants Weyer, DeFeo, Black, Papastavrou, McAllister, McKinney, Jacobs, Hicks, Milne and Suwyn would have been futile;

(k)     Defendant Clark, by his specialized financial expertise, was in a unique position to understand the business of United Rentals, as well as its finances, markets and present and future business prospects. Specifically, defendant Clark is Vice Chairman and a director of Lehman Brothers Inc. and has been since 1993. From 1990 until assuming his current position, defendant Clark was Chairman, President and CEO of Shearson Lehman Brothers Holdings Inc. Defendant Clark was previously a senior executive at American Express Company from 1981 to 1993, and a managing director of Blyth Eastman Paine Webber Incorporated or predecessor firms from 1968 to 1981. While at American Express, defendant Clark's positions included five years as Executive Vice President and CFO. This defendant, because of his unique qualifications, had a heightened duty to insure the accuracy and fairness of United Rentals' financials. Nonetheless, defendant Clark breached his duties by causing or allowing the improper financials described herein. As a result of this defendant's breach of his duties, any demand upon him would have been futile;

(l)     Defendant McAuley, by his specialized financial expertise, was in a unique position to understand the business of United Rentals, as well as its finances, markets and present

- 70 -

and future business prospects.  Specifically, defendant McAuley has been a partner at NH II, LLC, a consulting firm that specializes in telecommunications businesses, since 2003. Defendant McAuley is a co-founder of Nextel Communications, Inc. and held senior executive positions at Nextel from the company's inception in 1987 until 1996, including seven years as President and CEO.  Upon leaving Nextel, he joined Imagine Tile, a custom tile manufacturer, where he served as chairman and CEO from 1996 to 1999 and continues to serve as chairman.  He also served as president and CEO of NeoWorld Communications, Inc., a wireless telecommunications company, from 1999 until the sale of that company to Nextel in 2003.  Defendant McAuley is a certified public accountant and, prior to co-founding Nextel, his positions included corporate controller at Norton Simon Inc. and manager at Deloitte & Touche, an accounting firm.  Finally, as stated on page 122 of United Rental's FY:05 Form 10-K, "[t]he board of directors has determined that Brian McAuley qualifies as an 'audit committee financial expert,' as such term is defined under Item 401(h) of Regulation S-K promulgated under the Exchange Act."  This defendant, because of his unique qualifications, had a heightened duty to insure the accuracy and fairness of United Rentals' financials.  Nonetheless, defendant McAuley breached his duties by causing or allowing the improper financials described herein.  As a result of this defendant's breach of his duties, any demand upon him would have been futile;

(m)     Defendant McKinney, by his specialized financial expertise, was in a unique position to understand the business of United Rentals, as well as its finances, markets and present and future business prospects.  Specifically, defendant McKinney previously served as CFO of U.S. Rentals, from 1990 until September 1998, and as controller of U.S. Rentals, from 1988 until 1990. Prior to joining U.S. Rentals, defendant McKinney held various positions at Iomega Corporation, including assistant controller, and at the accounting firm of Arthur Andersen & Co.  This defendant, because of his unique qualifications, had a heightened duty to insure the accuracy and fairness of United Rentals' financials.  Nonetheless, defendant McKinney breached his duties by causing or allowing the improper financials described herein.  As a result of this defendant's breach of his duties, any demand upon him would have been futile;

(n)      During the Relevant Period, and while possessing material, non-public and adverse information about United Rentals, defendant Weyer sold 10,000 shares in the Company for $178,860.  As a result of his access to and review of internal corporate documents; conversations and connections with other corporate officers, employees and directors; and attendance at management and Board meetings, defendant Weyer knew the material, adverse, non-public information regarding the specifics of the financial controls deficiencies and other improprieties alleged above.  While in possession of this material, adverse, non-public information regarding the Company, during the Relevant Period, Weyer sold 10,000 shares in the Company for proceeds of $178,860.  Because Weyer received a direct personal financial benefit from the challenged insider trading transactions, he is interested and faces a substantial threat of personal liability for breach of his fiduciary duties for insider selling.  Since Weyer has breached his fiduciary duties and is interested, any demand upon him would have been futile;

(o)      According to United Rentals' Form 10-K for FY:05 filed with the SEC on or about March 31, 2006, a non-executive director of the Board for FY:04 through FY:06 was entitled to receive the following compensation for his or her service:  (a) an annual, fully-vested grant of options to purchase 3,000 shares of the Company's common stock at an exercise price equal to the market value of the stock at the time of the grant; (b) an annual "retainer fee" of $40,000; (c) a fee of $1,500 for each board and/or committee meeting he or she attended (except for the audit and special committees of the Board); and (d) an annual fee of $5,000 for serving as the chairman of any committee except the audit and special committees.  To the extent he or she served on the audit and/or special committee(s) of the Board, he or she also was entitled to receive:  (a) a fee of $2,000 for attendance at each such committee meeting; and (b) if serving as chairman, an annual fee of $10,000 for his or her service in each such position. Accordingly, defendants Jacobs, Clark, Gross, McAllister, McAuley, McKinney, Suwyn, Tsai, Black and Papastavrou are incapable of impartially considering a demand to commence and vigorously prosecute this action because they have an interest in safeguarding their substantial compensation;

(p)      Although United Rentals determined that defendant Milne had breached his duties to the Company, the other Individual Defendants nevertheless caused the Company to

repurchase Milne's shares for over $7 million, which resulted in a pre-tax expense of about $5 million for the third quarter of fiscal year 2005. The Individual Defendants who authorized the repurchase wasted the Company's assets merely in order to entrench themselves against attack by a dissident shareholder such as Milne, and as a result, any demand on such defendants to rescind the transaction and/or seek reimbursement of the sum paid to Milne as a waste of corporate assets would have been futile;

(q)     The Individual Defendants, because of their inter-related business, professional and personal relationships, have developed debilitating conflicts of interest that prevent the Board members of the Company from taking the necessary and proper action on behalf of the Company as requested herein. In addition to the conflicts that exist as a result of their participation in the improper accounting and insider selling, as detailed herein *supra*, the majority of the Board, including the defendants listed below, are subject to the following prejudicial entanglements:

(i)     ***Hicks and Jacobs Are Long Time Business Associates***:

Defendant Hicks served as the Vice Chairman of the Board and Chief Acquisition Officer of United Waste Systems, Inc. ("United Waste Systems") between 1993 and 1997. Defendant Jacobs was the Chairman of the Board and CEO of United Waste Systems between 1989 and 1997. Because of their long standing and entangling business and professional relationships, neither defendant Hicks nor defendant Jacobs would have taken the action requested by plaintiff herein against one another or the remainder of the Individual Defendants.

(ii)     ***Hicks and McAuley Are Long Time Business Associates***:

Defendant Hicks served as the Vice Chairman of the Board and CEO of Nextel Communications, Inc. ("Nextel") between 1994 and 1995. Defendant McAuley is the Co-founder and held several senior executive positions with Nextel between 1987 and 1996. Because of their long standing and entangling business and professional relationships, neither defendant Hicks nor defendant McAuley would have taken the action requested by plaintiff herein against one another or the remainder of the Individual Defendants.

(iii)     ***Hicks and Clark Are Long Time Business Associates***:

Defendant Hicks is a director of Maytag Corporation ("Maytag"), and has been since 1994. Defendant Clark is a director of Maytag, and has been since 1986. Because of their long standing and entangling business and professional relationships, neither defendant Hicks nor defendant Clark would have taken the action requested by plaintiff herein against one another or the remainder of the Individual Defendants.

(iv)     ***Black, Gross and Tsai Are Long Time Business Associates***:

Black is a founding principal of Apollo Advisors L.P. ("Apollo"), and has been since 1990. Defendant Gross is a founding principal of Apollo, and has been since 1990.

Defendant Tsai is a director and investor of Apollo, and has been since at least 2004. Because of their long standing and entangling business and professional relationships, Black would not have taken the action requested by plaintiff against defendants Gross and Tsai or the remainder of the Individual Defendants.

(v)   ***Black and Tsai Are Long Time Business Associates***:

Black served as a director of Sequa Corporation ("Sequa") between 1997 and 2003. Defendant Tsai is a director of Sequa, and has been since 1973. Because of their long standing and entangling business and professional relationships, Black would not have taken the action requested by plaintiff herein against defendant Tsai or the remainder of the Individual Defendants.

(vi)   ***Black and Gross Are Long Time Business Associates***:

Black is as a director of Allied Waste Industries, Inc. ("Allied"), and has since 2000. Defendant Gross is a director of Allied, and has been since 1997. Black serves as a trustee of Mount Sinai Hospital, and has since at least 2004. Defendant Gross is the Co-Chair of the Board of Directors of Mount Sinai Children's Center Foundation, and has since at least 2004. Further, defendants Gross and Black was both directors of Interco, Inc. ("Interco") from March 1992 until 1996. Because of their long standing and entangling business and professional relationships, Black would not have taken the action requested by plaintiff herein against defendant Gross or the remainder of the Individual Defendants.

(vii)   ***Gross and Tsai Are Long Time Business Associates***:

Defendant Gross is a director of Saks Incorporated ("Saks"), and has been since 1994. Defendant Tsai served as a director of Saks between 1993 and 2001, and currently serves as a director emeritus of Saks. Because of their long standing and entangling business and professional relationships, neither defendant Gross nor defendant Tsai would have taken the action requested by plaintiff herein against one another or the remainder of the Individual Defendants.

(viii)   ***Jacobs Maintains Conflicting Financial Motivations***:

Defendant Jacobs is the Chairman of the Board of United Rentals, and has been since 1997. Defendant Jacobs also serves as a consultant to United Rentals, and has since December 2003. Under his consulting agreement with United Rentals, defendant Jacobs receives an annual fee of up to $250,000, health and insurance benefits, $2,084 per month in lieu of benefits other than health insurance and personal use of the Company's aircraft. Because of Jacobs' entangling business and financial relationships with United Rentals, defendant Jacobs would not have taken the action requested by plaintiff herein against the remainder of the Individual Defendants.

(ix)   ***DeFeo Maintains Conflicting Financial Motivations***:

Defendant Defeo is the Chief Executive Officer and a director of Terex Corporation ("Terex"). In its 2003 proxy statement, United Rentals noted that the Company purchased $52.3 million of equipment from Terex in FY:02, and that the Company expected to do so in the future. Because of DeFeo's entangling business and financial relationships with United Rentals, he would not have taken the action requested by plaintiff herein against the remainder of the Individual Defendants.

(r)     Each of the key officers and directors knew of and/or directly benefited from the wrongdoing complained of herein;

(s)     The defendant directors of United Rentals, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Company stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties;

(t)     In order to bring this suit, all of the Director Defendants would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand;

(u)     The acts complained of constitute violations of the fiduciary duties owed by United Rentals' officers and directors and these acts are incapable of ratification;

(v)     Each of the Director Defendants authorized and/or permitted the false statements disseminated directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various of the false and misleading statements and are principal beneficiaries of the wrongdoing alleged herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them; thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves;

(w)     United Rentals has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for United Rentals any part of the damages United Rentals suffered and will suffer thereby;

(x)     If the current directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations against them contained in class action complaints for violations of securities law, which admissions would impair their defense of the class actions and greatly increase the probability of their personal liability in the

class actions, in an amount likely to be in excess of any insurance coverage available to the Individual Defendants.  In essence, they would be forced to take positions contrary to the defenses they will likely assert in the securities class actions.  This they will not do.  Thus, demand is futile; and

(y)     If United Rentals' current and past officers and directors are protected against personal liability for their acts of mismanagement, abuse of control and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, i.e., monies belonging to the stockholders of United Rentals.  However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the defendants in this case contain provisions that eliminate coverage for any action brought directly by United Rentals against these defendants, known as, inter alia, the "insured versus insured exclusion."  As a result, if these directors were to sue themselves or certain of the officers of United Rentals, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery.  If there is no directors' and officers' liability insurance at all then the current directors will not cause United Rentals to sue them, since they will face a large uninsured liability.

124.    Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiff, the current Board of Directors has failed and refused to seek recovery for United Rentals for any of the wrongdoing alleged by plaintiff herein.  Instead, they have sought to minimize the impact of their conduct by misleading spin in the Company's restated financials and have paid millions to terminated employees Milne and Ehrenreich, whose acts and omissions, in part, caused the damages suffered by the Company.

125.    Plaintiff has not made any demand on shareholders of United Rentals to institute this action since such demand would be a futile and useless act for the following reasons:

(a)     United Rentals is a publicly held company with approximately 77 million shares outstanding, and thousands of shareholders;

(b)     Making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c)     Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## COUNT I

### Against All Defendants for Breach of Fiduciary Duty

126.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

127.     The Individual Defendants owed and owe United Rentals fiduciary obligations. By reason of their fiduciary relationships, the Officer Defendants and Director Defendants owed and owe United Rentals the highest obligation of good faith, fair dealing, loyalty and due care.

128.     The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision, including, without limitation, the following breaches:

(a)     The Individual Defendants failed to maintain an effective control environment over financial reporting, as more particularly admitted in the Form 10-Q filed by on behalf of the Company for the quarterly period ended March 31, 2005.

(b)     The Individual Defendants failed to maintain effective internal controls over the Company's financial statement close process, as more particularly admitted in the Form 10-Q filed by on behalf of the Company for the quarterly period ended March 31, 2005.

(c)     The Individual Defendants failed to maintain effective internal controls surrounding the Company's accounting for income taxes, which were not effective and represented a material weakness in the Company's internal control over financial reporting, as more particularly admitted in the Form 10-Q filed by on behalf of the Company for the quarterly period ended March 31, 2005.

     (d)    The Individual Defendants failed to maintain effective controls pertaining to the Company's self-insurance reserve estimation process, which were not effective and represented a material weakness in the Company's internal control over financial reporting, as more particularly admitted in the Form 10-Q filed by on behalf of the Company for the quarterly period ended March 31, 2005.

     (e)    The Individual Defendants failed to maintain effective controls regarding the manner that certain types of bulk rental assets were recorded, tracked and relieved from accounts upon disposal or sale, which were not effective and represented a material weakness in the Company's internal control over financial reporting, as more particularly admitted in the Form 10-Q filed by on behalf of the Company for the quarterly period ended March 31, 2005.

     (f)    The Individual Defendants failed to maintain effective controls relative to the valuation of equipment acquired by the Company in purchase business combinations, including, among other things, agreeing or permitting the use of inconsistent valuation methodologies (with a further underlying taint that certain unspecified Company employees suggested the intentional use of improper methodologies), inadequate supervision of personnel, inadequate coordination with providers of outside valuations, and the manipulation of opening balance sheet values by certain unidentified Company personnel.

129.    Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the financial results of the Company and failed to correct the Company's publicly reported financial results and guidance.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

130.    As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, United Rentals has sustained significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

131.    Plaintiff on behalf of United Rentals has no adequate remedy at law.

### COUNT II

### Against All Defendants for Abuse of Control

- 78 -

132.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

133.    The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence United Rentals, for which they are legally responsible.

134.    As a direct and proximate result of the Individual Defendants' abuse of control, United Rentals has sustained significant damages.

135.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

136.    Plaintiff on behalf of United Rentals has no adequate remedy at law.

## COUNT III

### Against All Defendants for Gross Mismanagement

137.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

138.    By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of United Rentals in a manner consistent with the operations of a publicly held corporation.

139.    As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, United Rentals has sustained significant damages in excess of hundreds of millions of dollars.

140.    As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

141.    Plaintiff on behalf of United Rentals has no adequate remedy at law.

## COUNT IV

### Against All Defendants for Waste of Corporate Assets

142.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

143.    As a result of the improper accounting, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, defendants have caused United Rentals to waste valuable corporate assets by paying incentive based bonuses to certain of its executive officers and incur potentially tens of millions of dollars of legal liability and/or legal costs to defend defendants' unlawful actions.

144.    As a result of certain Individual Defendants causing the Company to purchase the shares and options held by defendant Milne for over $7 million, which led to a pre-tax expense of $5 million to the Company for the third quarter of FY:05, such defendants caused United Rentals to waste valuable corporate assets because the repurchase was intended merely to entrench the interests of such Individual Defendants against a possible dissident shareholder, and not because such a repurchase was in the best interests of the Company or its shareholders.

145.    As a result of certain Individual Defendants causing United Rentals to pay the amounts and items alleged above to Joseph Ehrenreich, the Company's former Vice President and General Counsel, such defendants caused the Company to waste valuable corporate assets because such payments do not represent a fair and reasonable exchange for the minimal, non-discretionary services to be performed by Mr. Ehrenreich between the date of his separation agreement and the date of his formal termination.  Instead, such payments were merely intended by the Individual Defendants as "hush money" to secure Mr. Ehrenreich's post-termination loyalty and cooperation in connection with this action and other proceedings against the Company.

146.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

147.    Plaintiff on behalf of United Rentals has no adequate remedy at law.

## COUNT V

### Against All Defendants for Unjust Enrichment

148.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

149.    By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of United Rentals.  Such wrongful acts and omissions include, *inter alia*, the following:

(a)    ***Delayed filing of financial statements***.  Motivated partly by a desire for certain Individual Defendants to avoid the disgorgement provisions of SOX §304, one or more of the Individual Defendants caused or allowed United Rentals to file a number of financial statements with the SEC in an untimely manner, including, *inter alia*, the Company's Form 10-K for FY:04 and its Form 10-Qs for the first three quarters of FY:05.  As a result of such delays, the Company failed to comply with the terms of one or more agreements with its lenders that required, among other things, for the Company to timely file its financial statements with the SEC.  Such non-compliance forced the Company to pay at least $35 million in fees to the lenders and incur transaction costs of at least $4 million to secure various consents and waivers from the lenders relative to the untimely filings.

(b)    ***Massive outlays to protect the defendants***.  By November 2005, the Individual Defendants had caused United Rentals to pay out around $15 million for the nine months ended September 30, 2005, to cover costs relating to the SEC inquiry and related review by a committee of the Board.  Such outlays were made primarily to protect the personal interests of the officers and directors who are the defendants herein.

(c)    ***Improprieties that generated losses but no restatement***.

(i)    As early as the fourth quarter of fiscal year 2000, one or more of one or more of the Individual Defendants caused or allowed the Company to pay kickbacks to suppliers so that they would buy used equipment above its fair market value, which generated inflated revenues and gross profits, but the Individual Defendants asserted that they could not determine what portion of such revenues and profits was improperly recognized due to a "lack of documentation."

As a result, the Individual Defendants asserted that "disclosure" of this situation, rather than a restatement, was appropriate.

(ii)   Between December 2000 and March 2002, one or more of one or more of the Individual Defendants caused or allowed the Company to withhold critical information from the auditors relative to the accounting for six sale-leaseback transactions during this period, all of which involved accounting irregularities.

(iii)   In a January 26, 2006, press release and Form 8-K, the Individual Defendants conceded that the Company's practices in valuing equipment acquired in purchase business combinations from 1997 to August 2000 were not adequate. The press release and Form 8-K noted, *inter alia*, that unidentified Company personnel had withheld memoranda from the Company's auditors that suggested using improper methods of valuation and also "may have sought to manipulate opening balance sheet values for equipment acquired in purchase business combinations ...."

(d)   ***Massive losses for earlier periods that were not restated but merely disclosed***. Although the Individual Defendants decided not to restate the Company's financials for periods prior to fiscal year 2002, they caused the Company to disclose that it had suffered massive losses for those periods of at least $65 million.

150.   Plaintiff, as a shareholder and representative of United Rentals, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, salaries, bonuses and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## COUNT VI

### Against Defendants Hicks, Jacobs and Milne for Disgorgement
### Under the Sarbanes-Oxley Act

151.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

152.   Section 304 of the Sarbanes-Oxley Act of 2002 provides that if a public company prepares an accounting restatement due to material non-compliance with any financial reporting requirement under federal securities laws, and such non-compliance resulted from misconduct, then

the company's chief executive officer and chief financial officer must reimburse the company for certain payments made by the company to those executives.  Section 304, entitled "Forfeiture of Certain Bonuses and Profits," provides in full:

    a.    **Additional compensation prior to noncompliance with commission financial reporting requirements.**  If an issuer is required to prepare an accounting restatement due to the material non-compliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws, *the chief executive officer and chief financial officer of the issuer shall reimburse the issuer for* –

        1.    any bonus or other incentive-based or equity-based compensation received by that person from the issuer during the 12-month period following the first public issuance or filing with the Commission (whichever first occurs) of the financial document embodying such financial reporting requirement; and

        2.    any profits realized from the sale of securities of the issuer during that 12-month period.

    b.    **Commission exemption authority.**  The Commission may exempt any person from the application of subsection (a), as it deems necessary and appropriate.

    153.    United Rentals restated its financial statements for FY:02 and FY:03 due to the material non-compliance of such statements with federal securities laws reporting requirements. These restatements resulted from "misconduct" within the meaning of SOX §304, including, *inter alia*, actions taken by the Company's two former CFOs to conceal "critical information" from auditors regarding six sale-leaseback transactions between December 2000 and March 2002.  The first such statement to require restatement during this period was the Form 10-Q filed on May 15, 2002, for the quarterly period ending March 30, 2002; the last such statement to require restatement was the Form 10-K filed on April 15, 2004, for fiscal year 2003.  As a result, defendant Hicks (as the Company's CEO from December 2003 to the present), defendant Jacobs (as the Company's CEO from September 1997 to December 2003), and defendant Milne (as the Company's CFO from December 2002), are required to reimburse United Rentals for all bonuses or other incentive-based or equity-based compensation received by them from the Company during the period July 30, 2002 (the date of enactment of the Sarbanes-Oxley Act of 2002) through and including April 15, 2005. Further, defendants Hicks, Jacobs and Milne also are liable to United Rentals for any profits realized from the sales of securities by the Company during that same period of time.

154.    Defendants Hicks, Jacobs and Milne are also liable to plaintiff for reasonable costs and attorneys' fees in the prosecution of this derivative action on behalf of United Rentals.

## COUNT VII

### Against the Director Defendants for Violation of
### Section 14(a) of the Exchange Act

155.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

156.    The Individual Defendants issued, caused to be issued and participated in the issuance of materially false and misleading written statements to shareholders which were contained in the Company's proxy statements issued on April 30, 2003 and April 21, 2004.  Both proxy statements contained representations that the Audit Committee had reviewed and discussed the Company's audited financial statements for fiscal years 2002 and 2003 with Company management and outside auditors, and that the Audit Committee recommended to the Board that such audited financials be included in the Company's annual reports to be filed via Forms 10-K for fiscal years 2002 and 2003.  Moreover, defendants Tsai and Weyer, as members of the Compensation Committee, authorized that committee to issue a report on executive compensation included in the proxy statement for fiscal year 2002.  The report asserted, *inter alia*, that "[t]he Company in 2002 was solidly profitable (excluding non-cash goodwill write-offs)," which was among the factors cited by the report that the Compensation Committee considered when setting executive compensation levels for fiscal year 2002.  These representations, however, failed to disclose the litany of accounting and other financial controls improprieties alleged herein that led to the later restatement of those same financials.  By reasons of the conduct alleged herein, the Director Defendants who caused or allowed the issuance of these proxy statements violated §14(a) of the Exchange Act.  As a direct and proximate result of the wrongful conduct of such Director Defendants, United Rentals misled and/or deceived its shareholders by falsely portraying the Company's financial status for fiscal years 2002 and 2003.

157.    This information would have been material to United Rentals shareholders in determining whether or not to approve the annual incentive compensation plans for Company executives proposed in each of the proxy statements.

158.     Plaintiff, on behalf of United Rentals, thereby seeks relief for damages inflicted upon the Company in connection with the improper approval of the annual incentive compensation plans for Company executives recommended in each of the above-referenced proxy statements, which were based upon the misleading and incomplete proxy materials. Plaintiff, on behalf of United Rentals, also seeks a disgorgement of all incentive-based compensation paid to the Individual Defendants in connection with compensation plans described in the above-referenced proxy statements.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.     Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment;

B.     Declaring that defendants Hicks, Jacobs and Milne are liable under SOX §304 of the Sarbanes-Oxley Act of 2002 and requiring them to reimburse United Rentals for all bonuses or other incentive-based or equity-based compensation received by them during from July 30, 2002, through April 15, 2005;

C.     Declaring and decreeing that the Director Defendants caused the Company to act in violation of §14(a) of the Exchange Act;

D.     Declaring that the Individual Defendants were unjustly enriched during the Relevant Period, and requiring them to reimburse United Rentals for all bonuses or other incentive-based or equity-based compensation received by them during such period;

E.     Directing United Rentals to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote the following Corporate Governance Policies:

1.      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

2.      a provision to permit the shareholders of the Company to nominate at least three candidates for election to the Board; and

3.      a provision to appropriately test and then strengthen the internal audit and control functions.

F.      Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of United Rentals has an effective remedy;

G.      Awarding to United Rentals restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the defendants;

H.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

I.      Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED:  June 5, 2006                              DRUBNER, HARTLEY & O'CONNOR
                                                 GARY B. O'CONNOR ct11216
                                                 BRIAN CLIFFORD ct25442


                                                 _____/s/ Gary B. O'Connor_____
                                                 GARY B. O'CONNOR

                                                 500 Chase Parkway
                                                 Waterbury, CT 06708
                                                 Telephone: 203/753-8966
                                                 Facsimile:  203/753-6373

                                                 ROBBINS UMEDA & FINK, LLP
                                                 BRIAN J. ROBBINS
                                                 STEVEN J. SIMERLEIN
                                                 610 West Ash, Suite 1800
                                                 San Diego, CA  92101
                                                 Telephone: 619/525-3990
                                                 Facsimile:  619/525-3991

FARUQI & FARUQI, LLP
NADEEM FARUQI
320 East 39th Street
New York, NY 10016
Telephone: 212/983-9330
Facsimile:  212/983-9331

Counsel for Plaintiff

G:\Cases\United Rentals\Complaints\Derivative Complaints\Gordon\Amended\Gordon adv  United Der Cpt Amended FINAL.doc

## VERIFICATION

I, Natalie Gordon, am the plaintiff in the within action and a citizen of the State of New York. I have read the foregoing complaint and know the contents thereof, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true. I am a current shareholder of United Rentals, Inc. and have been a shareholder throughout the time period of the complaint.

June 1, 2006

_Natalie Gordon_
Natalie Gordon

-83-

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on June 5 2006, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____/s/Gary B. O'Connor_____

Gary B. O'Connor